DALLAS GENERAL DRIVERS, WARE-HOUSEMEN AND HELPERS, LOCAL UNION NO. 745, Affiliated With International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Farmers Co-operative Gin Association, Intervenor.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

FARMERS CO-OPERATIVE GIN ASSOCIATION, Respondent,

Dallas General Drivers, Warehousemen and Helpers, Local Union No. 745, Affiliated With International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Intervenor.

Nos. 20565, 20613.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 9, 1974.

Decided April 17, 1974.

As Amended May 6, 1974.

Peter Ames Eveleth, Deputy Asst. Gen. Counsel, Contempt Litigation, N. L. R. B., with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Asst. Gen. Counsel, and Paul Elkind, Chief, Contempt Litigation, N. L. R. B., were on the brief, for petitioner.

J. D. McLaughlin, Paris, Tex., for respondent-intervenor, Farmers Cooperative Gin Assn.

Before BAZELON, Chief Judge, and McGOWAN and WILKEY, Circuit Judges.

WILKEY, Circuit Judge:

This case comes to us via petitions of the National Labor Relations Board to hold the Farmers Co-operative Gin Association in civil contempt of this court's order in Dallas General Drivers, Warehousemen, and Helpers, Local 745 v. NLRB,[1] and also to hold the Company in criminal contempt. After receipt of the first petition for civil contempt on 6 October 1971, we appointed a Special Master to take testimony and receive evidence. He filed his report on 31 May 1973. In September 1973 the NLRB filed a second petition for civil contempt, concerning violations subsequent to the first petition, and also sought initiation of criminal contempt proceedings. We ordered consolidation of the motions and heard argument in January 1974.

In January 1968 this court ordered enforcement of an NLRB order directing the Company to cease and desist from violating the NLRA. At that time violations by the Company included

(1) threatening and interrogating employees regarding union activities and promising benefits for abandonment of union activities;

(2) failing to bargain in good faith, and making unilateral changes in wages and working conditions; and

(3) refusing to reinstate employees, striking because of unfair labor practices, to their former jobs, due to their alleged strike misconduct.[2]

■ In our decree of 12 March 1968 we specifically ordered the Company to cease and desist from

(a) Interrogating, warning, or threatening its employees regarding their Union activities

(c) Refusing to bargain collectively in good faith with . . . [the Union]

(d) Dealing unilaterally, directly or indirectly, with the employees . . . concerning jobs, wages, working conditions or conditions of employment.[3]

The Company has failed to comply with our order and has violated its duty to bargain collectively. We hereby find the Company in civil contempt.

We reach our conclusion that the Company is in civil contempt after careful consideration of the Special Master's report and findings, as well as the parties' briefs and argument. Specifically, we adopt the Special Master's finding that the Company violated the court's decree requiring collective bargaining by

(1) unilaterally granting general wage increases

(2) refusing to bargain with the Union after 10 August 1970 without having a good faith doubt concerning the Union's status as majority representative of the employees.[4]

These actions clearly violate our 1968 decree, and constitute civil contempt of this court. We direct that such violations cease forthwith, and that the Company henceforth comply with all orders entered herein.

■ The Special Master found that general five-cent per hour wage increases granted by the Company on 10 April 1969 and 1 April 1970 violated the Company's duty to bargain because the Company did not give the Union sufficient notice of its intent so that the Union could request bargaining. Preliminarily, it should be noted that the findings of fact of the Master should not be set aside by the court unless clearly

1. 128 U.S.App.D.C. 383, 389 F.2d 553 (1968) (Bazelon, Bastian, and Burger).

2. 128 U.S.App.D.C. at 384, 389 F.2d at 554. These actions violated, respectively, sections 8(a)(1), 8(a)(1) and (5), and 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a).

3. The language quoted first appeared in the NLRB's order, reported at 161 N.L.R.B. 887, and our decree of 12 March 1968 directed enforcement of these provisions.

4. See Report of Special Master at 8–12, 15–20.

erroneous.[5] The Master's factual conclusion that the Union did not have more than a few days' advance notification of the Company's two wage increases is reasonable. While in each case the Union and Company had been discussing wage proposals over a period of time, in each case the Union did not receive notice that the Company planned a wage increase different in scope from the proposals (in that it required no contract agreement) until two days prior to the effective date.[6]

■ We agree with the legal conclusion drawn by the Master, that the two-day notification was an unreasonable time, too short to allow the Union to bargain collectively.[7] Thus, the wage increase was a unilateral increase, and such a unilateral change of conditions of employment which are under negotiation is a violation of NLRA § 8(a)(5).[8] A unilateral change may be made only if bargaining is at an impasse and the change is within the area of negotiation.[9] Here there was no indication that bargaining was at an impasse, and furthermore the Company had adopted a plan different from the plan discussed with the Union, which had tied a wage increase to a three-year contract. Hence the Master's conclusion that the general wage increases were unlawful is adopted by the court.

The Master found that the refusal of the Company as of 10 August 1970 to recognize the Union as the collective bargaining agent was not based upon a good faith doubt concerning the support by the employees for the Union, and therefore the refusal violated the Company's duty to bargain collectively.[10] Furthermore, subsequent wage increases and change in the health program also violated the Company's statutory duty.

In so finding, the Master also determined that on 10 August 1970 the Union did have a clear majority's support. This was determined through a review of the employees' authorization cards (signed after 10 August) and a review of newspaper photographs showing 24 of the 44 employees wearing a Union pin, as well as through the refusal of the employees to participate in a Company-conducted election. The Master found the Company's assertions of a good faith doubt to be insubstantial. For example, the Company's argument that the Union might not be representative because five years had elapsed since the original election was weakened by the 1968 court order to bargain collectively, which created a presumption that the Union was representative. Furthermore, the Master evaluated the evidence put forward by the Company concerning employee dissatisfaction with the Union, and found the evidence sketchy and inadequate to establish a good faith doubt. We view these findings as clearly reasonable and adopt them.

■ It should be noted that there is a continuing though rebuttable presumption that the Union retains its majority status.[11] To overcome this presumption, the employer must show a reasonable basis in fact for doubt concerning the Union's majority status, as well as good faith.[12] Self-serving assertions are not

5. *See* NLRB v. Kohler Co., 122 U.S.App.D.C. 101, 104, 351 F.2d 798, 801 (1965); *cf.* Fed.R.Civ.P. 53(e)(2). However, the Master's conclusions of law are entitled to no special weight. *See* 5 Moore's Federal Practice, §§ 53.12 [5], [7] (2d ed. 1971).

6. *See* Transcript of Hearings Before Special Master at 82–85, 101–106, 120–124, 188–208, 605, 662–665, 683–690; 251–253, 672–674.

7. *See, e. g.,* Garment Workers v. NLRB, 150 U.S.App.D.C. 71, 83, 463 F.2d 907, 919 (1972).

8. NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).

9. *See* NLRB v. Intracoastal Terminal, Inc., 286 F.2d 954, 959 (5th Cir. 1961); NLRB v. Crompton Mills, 337 U.S. 217, 223–225, 69 S.Ct. 960, 93 L.Ed. 1320 (1949).

10. Report of Special Master at 15–20.

11. NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 279 n. 3, 92 S. Ct. 1571, 32 L.Ed.2d 61 (1972).

12. Allied Industrial Workers, AFL–CIO, Local 289 v. NLRB, 155 U.S.App.D.C. 112, 125, ·476 F.2d 868, 881 (1973).

enough, and the employer must offer some corroboration.[13] The Company has not met its burden here. The only showing of any substance which it has made is that turnover of employees resulted in only 16 of the original group of 44 employees remaining.[14] Even when combined with the Company's assertions of employee dissatisfaction, this does not establish a good faith doubt of or a reasonable basis in fact to suspect the Union's majority status.

Hence we conclude that unilateral general wage increases by the Company and the failure to bargain collectively with the Union violate both the letter and spirit of our 1968 decree. While finding the Company in civil contempt, we decline at this time to initiate criminal contempt proceedings.

Our order requires first and foremost that the Company cease and desist from its violations of the duty to bargain collectively. In particular, we direct the Company to undertake to

(1) comply fully with the decrees of this court,

(2) upon request, bargain collectively in good faith with the Union as the exclusive representative of the Company's employees in the certified unit, and embody any understanding reached in a signed agreement,

(3) post immediately in conspicuous places, including all places where notices to employees are customarily posted, for a period of sixty consecutive days, copies of the contempt adjudication and of a notice in the form prescribed by the Board and signed by the Company and the Manager (Thompson) which states that the Company has been adjudicated in civil contempt of this court for failing and refusing to comply with our decree, and that it will take the actions ordered by this court to purge itself of this contempt. Such notices and copies shall be maintained in clearly legible condition throughout such posting period, and the Company and Thompson shall assure that they are not altered, defaced or covered by any other material,

(4) assemble the Company's employees at the Company premises on Company time and read the aforesaid notice to them,

(5) mail to each of the current and former employees employed at any time after 12 March 1968 a copy of the aforesaid signed notice and of the contempt adjudication,

(6) file a sworn statement with the Clerk of this court, and a copy thereof with the Director of the Sixteenth Region of the NLRB, within thirty days after the entry of this order and again at the end of the posting period, showing what steps have been taken by the Company to comply with the court's decrees.

To insure against further violations of our decrees, we have decided that a fine will be levied prospectively against the Company for each day of further noncompliance. The fine will be $250 per violation per day. Such prospective fines are traditionally applied when parties have exhibited a marked recalcitrance to obey court decrees.[15]

We are also requiring the Company to pay reasonable attorney fees and costs of the NLRB in preparing, investigating, and prosecuting this action. This has been ordered by this court in other such civil contempt cases,[16] and is a means of compensating the NLRB for

13. *Id.* at 881–882.

14. *See* Exceptions to Report of Special Master filed by Farmers Co-operative Gin Ass'n, Exhibit A, at 12.

15. *See* United States v. United Mine Workers, 330 U.S. 258, 303–305, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ; West Texas Utilities Co. v. NLRB, 92 U.S.App.D.C. 224, 231, 206 F. 2d 442, 449, cert. denied, 346 U.S. 855, 74 S.Ct. 70, 98 L.Ed. 369 (1953).

16. West Texas Utilities Co. v. NLRB, 92 U. S.App.D.C. at 230–231, 206 F.2d at 448–449.

costs sustained as a result of the Company's violation of the law.[17]

In conclusion, we note that it is now apparent that the Company has engaged in activities violating our decree for nearly five years. The Company will now proceed immediately to fulfill its duty to bargain collectively with the Union. We will accept no excuse for further intransigence or hesitation in following our orders.

## ORDER

After briefing and oral argument by the parties on the petition of the NLRB for adjudication of the Farmers Co-operative Gin Association in civil and criminal contempt of this court and for additional relief, it is

Hereby ordered by the court that the Farmers Co-operative Gin Association

(1) be adjudged in civil contempt of this court for the reasons set forth in the accompanying opinion;

(2) be required to pay reasonable attorney fees and costs of the NLRB in investigating, preparing, and prosecuting this action, the amount to be determined by the court on proof submitted by the NLRB no later than two months after the date of this order;

(3) be directed forthwith to bargain collectively and comply fully with our decree of 12 March 1968 and this decree;

(4) be required to make a return to this court within thirty days after the date of this order, showing that the Company has brought itself into compliance with the decree of 12 March 1968 and this order and opinion. Upon failure to make such a showing, this court will impose a prospective compliance fine of $250 per day for each violation and each day of continued noncompliance, and such other remedies as the court shall then find necessary.

The court declines to initiate criminal contempt proceedings at the present time.

---

17. United States v. United Mine Workers, 330 U.S. at 304, 67 S.Ct. 677.